# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY<br>*Plaintiff*<br><br>v.<br><br>LOUIS E. FISCHER and<br>ELEANOR M. FITZPATRICK FISCHER<br>*Defendants* | CIVIL ACTION<br><br>NO. 12-6946 |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 November 19, 2013

## MEMORANDUM OPINION and ORDER

On December 12, 2012, Allstate Property and Casualty Insurance Company ("Allstate") filed a Declaratory Judgment action against Louis E. Fischer and Eleanor M. Fitzpatrick Fischer ("Defendants") pursuant to 28 U.S.C. §2201 seeking a declaration of the rights, liabilities, and duties of the parties under Homeowners Insurance Policy No. 908885087 issued by Allstate to Defendants. On February 14, 2013, Defendants filed an answer to the complaint.

Before this Court for disposition are Allstate's *motion for judgment on the pleadings* [ECF 11], Defendants' answer in opposition [ECF 12], and Allstate's reply [ECF 13]. The central issue herein is whether Allstate has a duty to defend and/or indemnify Defendants under the homeowners insurance policy for the damages asserted in a wrongful death and survival action filed in state court by the Administrator of the Estate of Dominic John Crisconi, deceased ("Crisconi"). The state action seeks compensatory and punitive damages resulting from Defendants' alleged negligence and the fatal brutal assault of Crisconi by Defendants' son.

For the reasons set forth, this Court grants Allstate's motion and enters a declaratory judgment in favor of Allstate and against Defendants.

## BACKGROUND

In the declaratory judgment complaint, Allstate alleges the following relevant facts:

At all times relevant to this matter, Defendants were the named insured parties under Allstate's Homeowners Policy APC215, Policy No. 908885087. At the time of the assault, Patrick Fischer ("Fischer"), Defendants' adult son, resided at Defendants' residence.

On September 6, 2012, the administrator and personal representative of Crisconi's estate filed a wrongful death and survival action against Defendants in state court, alleging that on August 29, 2011, 53-year old Crisconi was using a wooden and metal tool to prune a tree in front of his residence in Philadelphia, PA, when Fischer approached and without provocation brutally attacked Crisconi, bludgeoning him with the pruning tool for several minutes. Numerous neighbors witnessed the attack and heard Crisconi's cries for help. Crisconi was taken by ambulance to the Hospital of the University of Pennsylvania, where he was pronounced dead. The cause of death was listed as "Blunt Impact Injuries to Face and Head."[1] The complaint further alleges that Defendants knew of their son's dangerous propensities and mental illness and were negligent in, *inter alia*, failing to procure for him adequate mental health treatment, failing to adequately control their son, failing to monitor his medication, and failing to notify law enforcement authorities of his dangerous propensities.

On September 17, 2012, Allstate sent Defendants a 'Reservation of Rights' letter advising them that Allstate had retained counsel to represent them in the underlying civil action pursuant to the homeowners policy. On the same date, Allstate sent Fischer a letter disclaiming coverage in the civil matter.[2]

## LEGAL STANDARD

As stated, the issue is whether Allstate has a duty to defend and/or indemnify Defendants under the homeowners insurance policy. Such interpretation of an insurance policy, is a question of law. *Allstate Ins. Co. v. Key-Berthau*, 2008 WL 5382924, *5 (E.D. Pa. Dec. 19, 2008) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897

---

[1] *Anthony J. Gallo, Administrator and Personal Representative of the Estate of Dominic John Crisconi, Deceased v. Patrick J. Fischer, et al.*, Philadelphia County Court of Common Pleas, February Term 2012, No. 3573. CCP Compl. ¶¶ 7-16 [ECF 11-4].

[2] As a result of the assault and death of Crisconi, Fischer was charged with murder, possession of an instrument of a crime, and resisting arrest. However, he was not convicted on any of these counts and was, instead, found incompetent and recommitted to Norristown State Hospital. *See Commonwealth v. Patrick Fischer*, MC-51-CR-0036995-2011. Municipal Court of Philadelphia County Criminal Docket at 2 [ECF 11-6].

(Pa. 2006) (citation omitted)). Thus, courts may dispose of such cases on motions for judgment on the pleadings where the sole issue concerns the interpretation of the policy. *Id.*

The rule of federal civil procedure provides that after the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Federal Rule of Civil Procedure 12(c). "A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment." *Voicheck v. Ford Motor Co.*, CIV.A. 12-6534, 2013 WL 1844273, *2 (E.D. Pa. May 2, 2013) (quoting *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007)). Thus, judgment on the pleadings will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 Fed. Appx. 143, 147 (3d Cir. 2011) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal citation omitted)).

In deciding a motion for judgment on the pleadings, the facts presented in the pleadings and the inferences to be drawn therefrom are viewed in the light most favorable to the nonmoving party. *Id.* A motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to "raise a right to relief above the speculative level." *Bangura v. City of Philadelphia*, 338 Fed. Appx. 261, 264 (3d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)). Here, the declaratory judgment complaint and the answer suggest that there are no factual disputes. Thus, this matter is ripe for disposition.

**DISCUSSION**

Under Pennsylvania choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was made. *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435

F.3d 431, 434 (3d Cir. 2006) (citing *Crawford v. Manhattan Life Ins. Co.*, 221 A.2d 877, 880 (Pa. Super. 1966)). "An insurance contract is 'made' in the state in which the last act legally necessary to bring the contract into force takes place." *Crawford*, 221 A.2d at 880. The parties herein selected Pennsylvania as the governing law.[3] Under Pennsylvania law, the interpretation of an insurance contract regarding the existence or the non-existence of coverage is generally performed by the court. *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). "When the language of the policy is clear and unambiguous, we must give effect to that language." *Id.* (citing *Kvaerner*, 908 A.2d at 897). However, "when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." *Kvaerner*, 908 A.2d at 897.

Here, the parties' disagreement centers on whether the homeowners insurance policy ("Policy") provides coverage claims asserted against Defendants for the death of Crisconi;[4] *to wit*: Defendants argue that Allstate has a duty to defend and indemnify them because the underlying complaint alleges injuries suffered that were either the result of negligence or an accident, thereby triggering coverage; Allstate relies on the criminal and intentional act exclusion clause for to deny coverage.

An insurer's duty to defend is broader than its duty to indemnify. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr. Inc.*, 2 A.3d 526, 540 (Pa. 2010)). It is a distinct obligation, separate and apart from

---

[3] "What Law Will Apply: This policy is issued in accordance with the laws of Pennsylvania and covers property or risks principally located in Pennsylvania. Subject to the following paragraph, the laws of Pennsylvania shall govern any and all claims or disputes in any way related to this policy." This clause is not contested. Mot., Exhibit "B" at 5 [ECF 11-3].

[4] The declaratory judgment action pertains to the disputed coverage of Defendants only, not their son, Patrick J. Fischer. *See Declaratory Judgment Complaint* [ECF 1].

4

the insurer's duty to provide coverage. *Am. & Foreign Ins. Co.*, 2 A.3d at 541. "In cases involving both the duty to defend and the duty to indemnify, it is necessary to examine the insurer's duty to defend because it arises whenever an underlying complaint may 'potentially' come within the insurance coverage." *Allstate Ins. Co. v. Lombardi*, 142 Fed. Appx. 549, 550 (3d Cir. 2005). "An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Am. & Foreign Ins. Co.*, 2 A.3d at 542; *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987).

To determine whether a complaint may "potentially" come within the insurance coverage, a court must: (1) determine the scope of the insurance coverage; and (2) analyze the allegations in the complaint. *Lombardi*, 142 Fed. Appx. at 550. "As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." *Am. & Foreign Ins. Co.*, 2 A.3d at 541 (citations omitted). "An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Id.* (citations omitted). In making this determination, the "factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Post*, 691 F.3d at 517 (quoting *Frog, Switch & Mfg. Co.*, 193 F.3d 742, 746 (3d. Cir. 1999)).

Defendants argue that Allstate is obligated to defend under the Policy's coverage based on the complaint's allegations of negligence,[5] since the alleged negligence can be considered an

---

[5] CCP Compl. ¶¶ 17-21[ECF 11-4].

"occurrence" (meaning "accident") covered under the Policy.[6] Specifically, coverage is provided for an "occurrence" defined under the Policy as:

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.[7]

Generally, injuries caused by negligence are considered to be the result of "accidents" within the meaning of insurance policies, and, correspondingly, negligence claims do not fall within policy exclusions for injuries "expected or intended" by the insured. That is, negligence is generally covered by the insurance policy. *See State Farm Fire & Cas. Co. v. Corry*, 324 F. Supp. 2d 666, 672 (E.D. Pa. Jul. 8, 2004) (allegations made in joinder complaint sounding in both intentional tort and negligence required the insurer's duty to defend) (citing *Lancaster Area Refuse Auth. v. Transamerica Ins. Co.*, 263 A.2d 368, 369 (Pa. 1970)); *Britamco Underwriters, Inc. v. Emerald Abstract Co.*, 855 F. Supp. 793, 798 (E.D. Pa. 1994) (insurer owed a duty to defend because, in addition to assault and battery, plaintiff asserted alternative theories of recovery sounding in negligence.); *see also Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989) (duty to defend insured when the insured was sued for personal injuries under alternate counts of negligence and assault and battery).

Although the underlying complaint asserts claims of negligence, our analysis does not stop here. Allstate argues that the underlying claims against Defendants fall within the policy exclusion clause because these claims are based on Fischer's criminal and intentional conduct. The relevant exclusion clause provides:

> 1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:

---

[6] Mot., Exhibit "B" at 3 [ECF11-3].
[7] *Id.*

a) such insured person lacks the mental capacity to govern his or her conduct;
   b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
   c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.[8]

...

Insured person(s)—means you and, if a resident of your household:
   a) any relative; and
   b) any person under the age of 21 in your care.[9]

Under the Policy, the definition of "insured person" encompasses the signed insured(s) and, if "a resident" of the household, "any relative". Thus, under the Policy definitions noted, both Defendants and their son, who lived with Defendants at the time of the incident, are insured persons. *See* Declaratory Judgment Complaint ¶ 7 and Answer ¶ 7 (admitting that Fischer resided with the parents).

When considering the exclusion clause, "[t]he intentionality of any underlying conduct is not to be assumed. Specific crimes of intent, such as assault or murder, are intentional on their face and, therefore, are not covered as these are 'reasonably expected' to bring about the bodily harm caused." *Allstate Ins. Co. v. Hopfer*, 672 F. Supp. 2d 682, 689 (E.D. Pa. Nov. 18, 2009) (citing *State Farm Fire and Cas. Co. v. Bellina*, 264 F. Supp. 2d 198 (E.D. Pa. 2003) (citations omitted)); *see also Allstate Ins. Co. v. Sheridan*, 82 Fed. Appx. 777, 780 (3d Cir. 2003) (act of shooting was intentional within the meaning of the policy, thereby absolving Allstate of responsibility; and the purported lack of mental capacity at the time of the shooting is irrelevant).

Here, the basic facts are undisputed: Fischer obtained the pruning tool that Crisconi was utilizing to prune the tree and, without provocation, used it to bludgeon Crisconi so severely as to

---

[8] Mot., Exhibit "B" at 22-24 [ECF 11-3].
[9] *Id.* at 3.

cause his death. This type of vicious assault is one reasonably expected to bring about bodily harm. The Policy's unambiguous and clearly worded exclusion clause is applicable even if Fischer "lacks the mental capacity" to govern his conduct and "regardless of whether such insured person is actually charged with, or convicted of a crime." *See* Mot., Exhibit "B" at 24 [ECF 11-3].

Despite Defendants' argument that their negligence is at issue, the operative language of the Policy excludes coverage for bodily injury intended by "any insured person." Pennsylvania courts have held that where an insurance policy specifically excludes coverage for loss resulting from the intentional actions of "any" or "an" insured, as opposed to "the" insured, the insured's obligations under the policy are joint and the prohibited acts of one insured precludes coverage for all others. *Allstate Ins. Co. v. Kenney*, 2003 WL 22316776 at *5 (E.D. Pa. Oct. 8, 2003); *McAllister v. Millville Mut. Ins. Co.*, 640 A.2d 1283, 1288 (Pa. Super. 1994); *Key-Berthau*, 2008 WL 5382924 at *9.

In *Key-Berthau, supra.*, the Court interpreted an exclusion clause identical to the one at issue here and applied it to a similar factual scenario. Key-Berthau, an insured under an Allstate homeowner's insurance policy, had a son who intentionally and criminally caused bodily injury to a third party. Based upon the factual allegations in the complaint, the intentional act exclusion of the Allstate policy precluded coverage for the insured. There, the inclusion of the word "any" effectively prevented coverage where one of the insured individuals (the son) fell within the exclusion and the insurer was not obligated to defend or indemnify Key-Berthau (the mother) in the underlying lawsuit, even though the allegations against her were deemed to fall within the term "occurrence". *See also Allstate Indemnity Co. v. Batzig*, 270 Fed. Appx. 154, 156 (3d. Cir. 2008) (in a policy that excludes from coverage "any bodily injury or property damage intended

8

by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person", such bodily injury or property damage resulting therefrom is not covered and the fact that the parents did not engage in any intentional behavior is irrelevant); *Donegal Mut. Ins. Co. v. Baumhammers*, 893 A.2d 797, 818 (Pa. Super. 2007), *aff'd in part, rev'd in part*, 938 A.2d 286 (Pa. 2007) (holding the fact that the parents of the child who committed criminal acts did not engage in criminal behavior was immaterial because the policy exclusion applied to the criminal behavior of "any insured", thus insurer did not have duty to defend parent-insureds against negligence claims where the underlying injuries were alleged to be caused by the intentional conduct of another insured, their son).[10]

As stated, the Policy exclusion precludes coverage for any insured for bodily injury caused by the intentional conduct of "any insured person". Within the Policy, an insured person includes the signed insured(s) and any resident of the household, including "relative." Thus, under the Policy's definition, both Defendants and Fischer are "insured" individuals. Therefore, based upon the factual allegations describing the intentional and criminal conduct of Fischer, the Policy exclusion clause precludes coverage for "any insured"; *i.e.*, Defendants and their son.

Lastly, the Policy's joint obligations clause also precludes coverage for claims against Defendants; *to wit*:

> Th[e] policy imposes joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as

---

[10] Defendants' reliance on *Britamco*, 636 A.2d at 651, is misplaced. Therein, the matter involved a policy exclusion which contained materially different language; *i.e*: "[t]he company will pay on behalf of *the* insured all sums which *the* insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence …." (emphasis added). *Compare also Corry*, 324 F. Supp. 2d at 671 (policy also contains an exclusion stating that State Farm will not provide coverage for bodily injury or property damage that was "either expected or intended by *the* insured" or that was "the result of willful and malicious acts of *the* insured") (emphasis added). Although the court in those cases determined that the insurer had a duty to defend the insured, the policies at issue therein used language "the insured" rather than "any insured", the language of contained in Allstate's policy.

an insured person will be binding upon another person defined as an insured person.[11]

An identical provision in *Kenney* illustrates its application. There, the defendant mother's son "viciously struck plaintiff's son, threw him to the floor of the bus and caused him to bleed out of his nose and mouth." The complaint alleged that defendant mother was negligent in the supervision of her son and that such negligent supervision was the proximate cause of plaintiff's son's injuries. *Kenney*, 2003 WL 22316776 at *1. There, the court concluded that the language of the intentional acts exclusion, particularly when coupled with the joint obligations provision, excluded coverage for any insured arising out of the injuries caused by the intentional or criminal acts of another insured. *Id.* at *5; *see also Allstate Ins. Co. v. Ervin*, 2006 WL 2372237, *5 (E.D. Pa. Aug. 14, 2006) (applying the criminal acts exclusion and joint obligations clause in precluding Allstate's duty to defend parents).

As previously determined, Fischer is an insured under the Policy. When considering the joint obligations clause, Fischer's intentional and criminal acts are binding upon Defendants, as insured persons. Because coverage is precluded as to Fischer for the criminal conduct, by operation of the joint obligations provision, coverage is also precluded as to Defendants.

**CONCLUSION**

For the reasons set forth above, Defendants' Homeowners Insurance Policy specifically excludes from coverage liability for damage resulting from the intentional and criminal acts of Fischer, an additional insured. Accordingly, Allstate has no duty to defend and/or indemnify the Defendants in the underlying matter. A declaratory judgment will be entered in Plaintiff's favor. An appropriate Order follows.

Nitza I. Quiñones Alejandro, J.

---

[11] Mot., Exhibit "B" at 4 [ECF 11-3].